UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

BARBARA PATSKIN,
WILLIAM PATSKIN,
parents of a disabled student,

                        Plaintiffs,

                                                    DECISION AND ORDER

                                                    07-CV-6321L

                        v.

BOARD OF EDUCATION OF WEBSTER
CENTRAL SCHOOL DISTRICT,


                        Defendant.
_____


      This action is brought pursuant to the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §1401 et seq., seeking judicial review of the decision of a State Review Officer ("SRO") regarding whether the individualized education program ("IEP") adopted and implemented by the Webster Central School District (the "District") provided sufficient services to S.P., a disabled student, during the 2006-07 school year. Defendant has moved for summary judgment dismissing the action (Dkt. #13), and plaintiffs have cross-moved for summary judgment (Dkt. #16).

      For the reasons that follow, defendant's motion is granted, and plaintiffs' cross-motion is denied.

**BACKGROUND**

S.P. is a student residing in the Webster Central School District.. He is classified by the District's Committee on Special Education ("CSE") as a student with a disability.

Until the third grade, S.P. was enrolled in regular education classes, and receiving remedial instruction in reading and math. During his fourth grade year (2005-2006), S.P.'s IEP called for an increase in services to: daily 15:1 (a maximum of fifteen students in a class with one teacher) special education classes for math and reaching, and daily consultant teacher services for English language arts. S.P. participated in regular education classes for all other subjects.

Implementation of S.P.'s IEP during the 2005-2006 school year resulted in S.P.'s participating in special education reading and math classes comprised of three students each, and receiving writing instruction from a teacher in a group of five students. For the remainder of his school day, he remained with his non-disabled peers in regular fourth grade classes, special area courses, lunch and recess.

According to the District's reports, S.P. benefitted from special education instruction during his fourth grade year, and demonstrated measurable improvements in reading, writing and math. He performed math problems at grade level. His performance in regular education science and social studies classes, however, declined. His teachers reported that S.P. appeared overwhelmed, confused and reluctant to work, performed below grade level and required individual support to complete science and social studies assignments. S.P.'s parents reported that homework had become a problem, and that he was throwing tantrums at home.

In March 2006, S.P.'s parents arranged for him to be evaluated by Dr. Katherine Vullo, a clinical psychologist. She diagnosed him with an adjustment disorder, and opined that pulling S.P. in and out of regular education classes was disruptive and frustrating for him. She recommended that enrollment in the Norman Howard School ("NHS"), an independent day school which exclusively provides special education to students with learning disabilities , would "maximize" S.P.'s academic and personal success.

The CSE convened in April 2006 to develop S.P.'s 2006-2007 school year IEP. At the meeting, plaintiffs presented testimony from Dr. Vullo, including her recommendation that S.P. attend NHS. Plaintiffs' attorney also appeared and advocated for S.P.'s placement at NHS.

The CSE examined S.P.'s emotional state, noting that although he demonstrated immaturity, he appeared happy at school and exhibited none of the tantrum behaviors his parents had noticed at home. District staff described S.P. as happy, well-adjusted and making progress within the special education setting. His progress in special education English and math classes was noted, along with developing difficulties with science and social studies. The CSE concluded that it would be beneficial for S.P. to receive special education classes in science and social studies in addition to reading and math, which would permit a single special education teacher to provide a consistent program and teaching methodology throughout his school day.

The CSE weighed placement of S.P. in 15:1 special education classes at the District's State Road School for core academic subjects, with continued participation in the regular education environment for the remainder of the school day, as opposed to placement at NHS. Ultimately, the CSE determined that the District's 15:1 special education classes were capable of addressing S.P.'s

needs in the least restrictive environment ("LRE"), and recommended placement in that setting for the 2006-2007 school year.

Plaintiffs contested the CSE's determination, alleging that the District had not provided S.P. with a free and appropriate public education ("FAPE"). Specifically, plaintiffs contended that the District failed: (1) to sufficiently assess S.P.'s "emotional and social status"; (2) to obtain consent to administer the Woodcock Reading Mastery Test and a Developmental Reading Assessment in March 2006; (3) to conduct an assistive technology evaluation; (4) to give "proper weight" to plaintiffs' concerns about S.P.'s emotional state; (5) to add counseling services to the IEP; (6) to consider whether the related service of parent counseling and training was appropriate; and (8) to place S.P. at NHS for the 2006-2007 school year.

In response to plaintiffs' challenge, an impartial hearing was held over four days in September 2006, before hearing officer Joan B. Alexander. On November 20, 2006 IHO Alexander issued her decision. On November 30, 2006, the IHO issued an order annulling the disputed IEP, and instructed the CSE to convene and immediately place S.P. at NHS.

The District appealed to the New York State Review Officer ("SRO"). By decision and order dated February 26, 2007, the SRO annulled the IHO's decision and order in all respects. He determined that: (1) there were no procedural irregularities sufficient to deny S.P. a FAPE; and (2) the placement recommended by the District provides S.P. with a FAPE, and therefore, the District had no obligation to place S.P. at NHS.

Plaintiffs now appeal from that decision.

**DISCUSSION**

**I.     Judicial Review**

The IDEA provides that, "[a]ny party aggrieved by the findings and decision" of an IHO or SRO may bring a civil action in federal district court (or a state court of competent jurisdiction). 20 U.S.C. § 1415(i)(2)(A). Then, the district court "(I) shall receive the records of the administrative proceedings; (ii) shall hear additional evidence at the request of a party; and (iii) basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate." 20 U.S.C. § 1415(i)(2)(C). *See also Grim v. Rhinebeck Cent. Sch. Dist.*, 346 F.3d 377, 380 (2d Cir. 2003); *J.N. v. Depew Union Free Sch. Dist.*, 2008 U.S. Dist. LEXIS 76285 at *7-*8 (W.D.N.Y. 2008).

However, despite the district court's duty to provide independent judicial review, it "is by no means an invitation to the courts to substitute their own notions of sound educational policy for those of the school authorities which they review." *Board of Educ. of the Hendrick Hudson Cent. Sch. Dist. v. Rowley*, 458 U.S. 176, 206 (1982). "While federal courts do not simply rubber stamp administrative decisions, they are expected to give 'due weight' to these proceedings, mindful that the judiciary generally 'lacks the specialized knowledge and experience necessary to resolve persistent and difficult questions of educational policy.'" *Walczak v. Fla. Union Free Sch. Dist.*, 142 F.3d 119, 129 (2d Cir. 1998), *quoting Rowley*, 458 U.S. 176 at 206, 208).

While "[t]he proposition that the courts must give 'due weight' raises the question of how much weight is due," *Schied v. Board of Educ. of the Penfield Cent. Sch. Dist.* 2006 U.S. Dist. LEXIS 74332 at *10 (W.D.N.Y. 2006), it is well settled that "deference is particularly appropriate

when . . . the state hearing officers' review has been thorough and careful." *Walczak*, 142 F.3d 119 at 129. Nonetheless, the "due weight" to be accorded to the state administrative proceedings extends solely to issues of fact, and "is not implicated with respect to . . . issue[s] of law," *Mrs. B. v. Milford Bd. of Educ.*, 103 F.3d 1114, 1122 (2d Cir. 1997), since "[s]tate hearing officers are not more experienced or expert than courts in interpreting federal statutes or the federal constitution . . . ." *Lillbask v. Conn. Dep't of Educ.*, 397 F.3d 77, 82 (2d Cir. 2005).

The court's inquiry is two-fold. The court "must assess: (1) whether the state complied with the procedural requirements of the IDEA, and (2) whether the challenged IEP was reasonably calculated to enable the child to receive educational benefits – in particular, whether the IEP complied with the IDEA's statutory mandate that [a student] be educated in the least restrictive environment." *Mrs. and Mrs. P.*, 2008 U.S. App. LEXIS 21099 at *17-*18, *quoting Walczak*, 142 F.3d 119 at 130 (internal quotations omitted). In determining whether the IEP was IDEA-compliant, the state is not obligated to "'maximize the potential of handicapped children," but the door of public education must be opened in a "meaningful way," and the IEP must provide the opportunity for more than only 'trivial advancement.'" *Id.* It is also clear that school districts are not required to accede to whatever educational program is preferred by the child or the parents.

**II.     Mootness**

Initially, the District argues that the matter should be dismissed on mootness grounds, because the 2006-2007 school year has passed, and S.P.'s IEP has subsequently changed at least twice.

The mootness doctrine is rooted in the "case or controversy" requirement of Article III of the Constitution, which describes "the principle that, at all times, the dispute before the court must be real and live, not feigned, academic, or conjectural." U.S. CONST art. III, § 2, cl. 1; *Russman v. Board of Educ. of Enlarged City School Dist. of City of Watervliet*, 260 F.3d 114, 118 (2d Cir. 2001). A case is moot, and the federal court is divested of jurisdiction over it, "when the parties lack a legally cognizable interest in the outcome." *Fox v. Bd. of Trustees of the State Univ. of N.Y.*, 42 F.3d 135, 140 (2d Cir. 1994) (internal quotation marks and citations omitted). Due to the rough and changing nature of student IEPs from one school year to the next, the mootness question "is a recurring phenomenon in students' suits to vindicate constitutional rights associated with the conditions of their education . . . [since, a]s the student's interest evaporates, so does the requisite case or controversy." *Russman*, 260 F.3d at 119 (internal citations omitted).

The Supreme Court has long recognized a limited exception to the mootness doctrine, where the plaintiff can show that the challenged action is "capable of repetition, yet evading review . . . " *Southern Pac. Terminal Co. v. ICC*, 219 U.S. 498, 515 (1911). The exception "applies only in exceptional situations, . . . where the following two circumstances are simultaneously present: (1) the challenged action is in its duration too short to be fully litigated prior to cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again . . . ." *Spencer v. Kemna*, 523 U.S. 1, 17 (1998) (internal brackets and quotation marks omitted).

Applying these principles to the record presented in this case, I conclude that the matter is indeed moot. Plaintiff argues that this is not so, because S.P. still has a learning disability, the

plaintiff parents continue to reside in the District, and they continue to advocate for S.P.'s placement at NHS.

Whether NHS is an appropriate placement for S.P. is not, however, the relevant issue. The relevant controversy is whether the particular IEP with which S.P. was provided for the 2006-2007 school year was an appropriate placement, and it is undisputed that there is no reasonable expectation that S.P. will be subjected to that particular IEP again, since S.P. is no longer eligible for placement at the State Road School. Accordingly, the action must be dismissed on mootness grounds. *See J.N.*, 2008 U.S. Dist. LEXIS 76285 at *12 (finding IDEA appeal of SRO's determination moot, where there exists no reasonable expectation that the complained-of IEP will be repeated in the future).

Furthermore, and as set forth below, even assuming *arguendo* that this matter is not moot, I nonetheless conclude that the SRO's decision was proper.

**III.     The State's Compliance with the IDEA's Procedural Requirements**

Initially, plaintiffs argue that the SRO failed to afford due deference to the determination of the IHO, and erroneously placed responsibility for requesting assistive technology and emotional assessments on S.P.'s parents instead of requiring the District to conduct every possible type of evaluation. Most significantly, plaintiffs assert that the SRO misapplied regulations concerning the definition of "least restrictive environment," omitting consideration of "potential harmful effect on the student" and resulting in a recommendation which, plaintiffs assert, places S.P. in an educational environment that is causing him emotional distress and lack of educational progress. 8 NYCRR §200.4(d)(4)(ii). In so doing, plaintiffs argue that the District had failed to provide them with

services in response to their reports of S.P.'s emotional and behavioral deterioration at home, and that the SRO ignored the reports of S.P.'s outbursts at home in making his findings.

While the mere existence of procedural violations does not necessarily indicate that a student has been denied a FAPE, an IHO may conclude that a FAPE has been denied where the procedural irregularities deprived the student of educational benefits, or interfered with a parent's right to participate in decisions regarding their child's program and placement. *See e.g.*, *W.A. v. Pascarella*, 153 F. Supp.2d 144 (D. Conn. 2001).

Neither circumstance is present here. It is undisputed that S.P. displayed emotional issues at home, which were not observed in school. The SRO's determination that there was little evidence of S.P. exhibiting behavioral difficulties in school, or of social-emotional problems affecting his educational progress, is well-supported by the record.

Furthermore, even assuming the truth of the plaintiffs' characterizations, the plaintiffs have not identified any procedural irregularities sufficient to deny S.P. a FAPE, and do not argue that their right to participate in the IDEA process, or to otherwise be heard in decisions concerning S.P.'s placement, was curtailed. Evidence concerning S.P.'s emotional condition was heard and considered by the CSE, and later the SRO: the fact that they reached a different conclusion about S.P.'s LRE based upon that evidence does not, in and of itself, comprise a fatal "procedural violation." There is also no indication in the record that performance of assistive technology and emotional assessments like those advocated by plaintiffs would have added anything of value to the formulation or review of S.P.'s IEP.

As such, I find that the alleged procedural irregularities are *de minimis*, and are insufficient to erode the deference due to the SRO's determination.

## IV.  The IEP

The IDEA requires that, "[t]o the maximum extent appropriate, children with disabilities . . . are educated with children who are not disabled, and special classes, separate schooling, or other removal of children with disabilities from the regular educational environment occurs only when the nature or severity of the disability of a child is such that education in regular classes with the use of supplementary aids and services cannot be achieved satisfactorily." 20 U.S.C. §1412(a)(5)(A). *See also Walczak*, 142 F.3d 119 at 122; *Mister and Mrs. P.*, 2008 U.S. App. LEXIS 21099 at *18-*20. The statute, then, evinces a presumption and preference for maintaining a student in a regular educational environment.

Determining whether regular education can be achieved "satisfactorily" requires consideration of several factors, including: (1) whether the school district has made reasonable efforts to accommodate the student in a regular classroom; (2) the educational benefits available to the student in a regular class, with appropriate aids and services, as compared with the benefits provided in a special education class; and (3) the possible negative effect of the student's inclusion on the education of other students in the class. *Id*. at *21-*22. These factors are not exhaustive, however, and "courts facing these cases must engage in an individualized and fact-specific inquiry into the nature of the student's condition and the school's particular efforts to accommodate it, ever mindful of the IDEA's purpose of educating children with disabilities, 'to the maximum extent

appropriate, together with their non-disabled peers.'" *Id*. at *23-*24, *quoting Walczak*, 142 F.3d 119 at 122.

Plaintiffs contend that in S.P.'s case, NHS is the most appropriate, and least restrictive, educational environment available. They note that both the IHO and SRO agreed that NHS provided programs and services that met S.P.'s needs, and that S.P. demonstrated excitement and enthusiasm at the idea of attending NHS. Plaintiffs contend that following his voluntary placement there beginning in the 2007-2008 school year, S.P. received grades in the 80s and 90s, with minimal support for reading and writing, and significant assistance in other courses.

Once again, whether NHS is an appropriate educational environment for S.P. is not the issue at hand. Rather, the Court must determine, based on the individual facts of this case, whether "the nature or severity of [S.P.'s] disability . . . is such that education in regular classes with the use of supplementary aids and services [could not have been] achieved satisfactorily." 20 U.S.C. §1412(a)(5)(A). While S.P. is entitled to "more than trivial" educational benefits, the District is not required to "maximize" each student's potential, *Walczak*, 142 F.3d 119 at 130, and "[n]othing in the IDEA compels [a] school district to look for private school options if the CSE, having identified the services needed by the child, concludes that these services can be provided in the public school. IDEA views private school as a last resort." *W.S. and L.S. v. Rye City Sch. Dist.*, 454 F. Supp. 2d 134, 138 (S.D.N.Y. 2006).

The record contains ample evidence that, in fact, S.P. was performing satisfactorily in his public school placement with supplemental special education services, and was receiving "more than trivial" educational benefits from his placement there. S.P.'s placement there was part of the District's reasonable effort to accommodate him in a regular classroom, which was done for all

subjects not requiring specialized instruction from a special education teacher. For those classes in which S.P. was mainstreamed, there is no evidence that S.P.'s inclusion interfered with the learning of other students. Significantly, there is no evidence that S.P. required special education in additional (non-core) subject areas, different from those provided for in his IEP, or that he would otherwise be deprived of a FAPE if he were not permitted to attend a program like that of NHS, which exclusively offers full-day special education classes to a student body wholly comprised of learning disabled students. The CSE had placed a number of students at NHS in the past, and was fully aware of the differences between the educational environment and services offered by NHS, and those available to S.P. at the State Road school.

The SRO issued a twenty-one page decision, making exhaustive factual findings based on the undisputed evidence, each of which specifically supports his finding that the District offered S.P. a FAPE in the LRE for the 2006-2007 school year. In sum, there is no indication that the SRO's determination – that S.P.'s 2006-2007 IEP was reasonably calculated to enable him to receive an educational benefit – was erroneous. *See Rowley*, 458 U.S. 176 at 206-207. Based upon the foregoing, I find no reason to disturb the findings of the SRO, which are entitled to deference.

## CONCLUSION

For the foregoing reasons, defendant's motion for summary judgment (Dkt. #13) is granted, plaintiff's cross-motion for summary judgment (Dkt. #16) is denied, and this action is dismissed.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
October 30, 2008.